Mr. Ross, permission of court, your honor. Good morning. David L. Ross on behalf of the petitioner. We would respectfully suggest, your honors, that first of all, the standard in this case is not one of substantial evidence, but de novo matter of law issues. The government raises an issue, and the immigration judge raised the issue, as to whether or not the facts that were recounted in this particular case were sufficient to constitute one of the five enumerated causes for asylum. That is, race, religion, nationality, and so forth. Aren't we actually a step in back of that? Didn't the IJ determine and the BIA summarily affirm the conclusion that whatever happened to your client was not persecution at all? Correct. That is correct, your honor. So isn't that the first issue we have to resolve? That is precisely what I am addressing. That is that the immigration judge found the petitioner credible. There was no issue as to the credibility of the petitioner. The only issue was, as a matter of law, did the facts that he stated in his application for asylum, to which he testified to and to which he was found to be credible, did those facts constitute sufficient basis for finding one of the five enumerated reasons for asylum? And we respectfully suggest to the Court that it did, and that the standard for the Court to review this is not the substantial evidence standard, which is not the case here, but, in fact, because this is an issue of law, i.e., what constitutes one of the five bases for asylum, this is a question of law, and the Court is free to make a decision and review whatever it wishes to, not under the substantial evidence rule, but as a matter of law as to what in the five enumerated bases. In this particular instance, we aver that the petitioner had sufficient basis for a claim of asylum, either under membership in a particular social group or under ethnicity. He stated, and he was believed by the immigration judge, that his house was raided at least on two separate occasions, that he was threatened, that his family was threatened by paramilitary groups that the government of Armenia refused to control, and even the government agrees in its brief that the State Department has found that members of particular minorities, specifically, in this case, Kurds, were subject to, quote, unquote, societal prejudices, discrimination, and even persecution. The government admits that. The government says that this is not membership in a particular social group, it's not based on ethnicity, it's not based on race, religion, and so forth, but how can you distinguish between, quote, unquote, societal bases and membership in a particular social group or ethnicity? The State Department specifically names people who are Kurds, and in this particular case, the petitioner is, in fact, a Kurd. You're basing this primarily upon the fact that the government would not do anything about it or was incapable of doing anything about it, right? That is precisely correct. That is correct, that the government knew about it, the government didn't do anything about it, and in fact, the truth is, the government supported this ethnic cleansing because the government was in a war. It was in a war with Muslims who were fighting for certain parts of territory, and these individuals happened to live in those territories where they had Christian enclaves, and they were trying to keep those enclaves wholly Armenian Christian, and that's exactly what happened. I thought from the record that your client was Yassidi? Yes, he was, but he was a member of the Kurdish group, Your Honor, it's a member of the Kurdish group. And let's say it's a minority within a minority? Correct. Let's suppose we were to agree with you that what happened to your client, in fact, factually constituted persecution. Did the IJ reach the question of whether it was on account of a protected ground? That's an interesting point. Well, the answer is no, isn't it? The answer is no, that's right. It's not, it's more than an interesting point. The answer is no. That is correct. That is correct. Because what the IJ did is, the IJ said that I can't get to that issue because I find that what happened to him was essentially, with regard to the housebreaking, the IJ found that this was a normal robbery. Okay, let's assume, again, for the purpose of this question, that we agree that the record compels factually the conclusion that he was indeed persecuted. How under Ventura could we reach the protected ground basis? Because, as stated previously, this is something that the government refused to protect him from. This is something that the government allowed to happen. And therefore, if you are not protected by your own government, you then reach the issue. Suppose we all could conjure up a hypothetical fact situation in which a police department was corrupt and they allowed thieves to burglarize homes in an area. With just that information, we couldn't conclude that the burglaries were done because the residents of the homes happened to be in a minority group, could we? Let me give you a certain answer. The answer to that's no also, isn't it? That is no, but I have to explain for the fact that the police are the government. That's right. That's the difference. That's right. That is correct. And it goes, for example, like, for example, Kristallnacht in Germany, when rampaging mobs went and attacked Jewish properties. The German government at that time claimed it was just a bunch of rampaging mobs, yet the only people they ever attacked were Jews. What we have here is we have groups of armed people with weapons dressed in military uniforms attacking, and who are they attacking? They're only attacking minorities. So the answer is that, in fact, they are singling out minorities. And so, yes, on the face of it, if you read it on paper, it sounds like people attacking other people and not necessarily the government doing anything about it because maybe they don't have enough police or so forth. But when you look at who the victims are, the victims are always minorities. My question didn't presume what the answer to the on account of is. I'm simply asking this question in an instance in which, let's assume that asylum has three steps. Was there persecution? If so, was it on account of a protected ground? And if so, does it raise a reasonable fear of future persecution? That's essentially what an immigration judge does, isn't it? Yes. And also I finished my question. That's that's essentially what an immigration judge does here. The question number one was answered in a negative way with respect to your client. And the I.J. didn't reach two or three. So my question is real simple. How could we reach two or three if the I.J. didn't? Because what the I.J. did is what courts do sometimes with jurisdiction. They have to determine whether or not they have jurisdiction to hear something. So they determine first whether the facts give them jurisdiction. The same thing with the judge. What the judge did was the judge said, well, let me look at the persecution. If there really is persecution here, then I'm going to understand that the persecution is because the government didn't do anything. But if I don't find that there's persecution, then I'm not even going to find that the government didn't do anything because the two are subsumed within each other. And that was the mistake that the immigration judge did. The immigration judge mixed the two together. And you have about a minute and a half left. I reserve it for rebuttal. OK. Thank you very much. Thank you for your argument. We'll hear from the attorney general at this time. May it please the court. My name is John Battaglia. I represent the United States. The immigration judge in this case found that the petitioner had not proven that there was a requisite government action, that there was a requisite link between the acts he described and the race or religion that he was claiming asylum on, or that there was harms amounting to past persecution, nor was there a well-founded fear of persecution. And there's nothing about this record that compels an opposite conclusion as to any of those four findings. The IJ found the petitioner credible. Is that correct? She found him credible with regard to his application. Yes. So the facts that he described, she found him credible, correct? As to the facts, but she could reach, she could draw different inferences or conclusions as to those facts. There's nothing inconsistent about her doing so. Was his testimony with respect in a general manner, with respect to the treatment of the religious subgroup to which he belongs, consistent or inconsistent with the country report? I would say the answer is it was inconsistent with the country report insofar as you can see in the record at 159, the country report says that there were no reported, there was no reported violence against religious groups. Doesn't in fact the country report say that this particular subgroup has been subjected to discriminatory acts and persecution? It's it indicates it doesn't say persecution. Indicate has a Latin phrase and it means to indirect. And there's no indication at all here. The country report says that this particular group has been subject to persecution, doesn't it? I don't recall the country report saying that. I think at 159 of the record, it makes clear that the, that there is discrimination, but that there are also no reported, uh, there's no reported violence against religious minorities and that the government does not discriminate the excerpts of record with you. I do your honor. Turn to page 159. What does the country report say at that page about discrimination against your cities? It says in the last paragraph, the city leaders continued to complain that police and local authorities subjected their community to discrimination. Um, it also indicates on that same page, uh, that the government does not discriminate against the small officially recognized national communities, including Kurds. Um, and there, and in the middle paragraph on that same page as to religious minorities, it says there was no reported violence against minority religious groups during the year. So given the government's position is that his testimony is inconsistent with the country report. As a general matter, I would say that the country report is mixed. I think you could view it as inconsistent, but there's nothing about this record that would compel an opposite point. If it's mixed, does that mean in part it's consistent? I think that's probably fair to say, your honor. Does it make any difference in this case that we find out why the wife was, uh, granted asylum? I submit it. It does not make a difference, your honor. This is the first mention about his wife being granted asylum. But would it make a difference if we found out why she was granted asylum? Not to this case, your honor. Why not? Because this argument was never presented to the board of immigration appeals before the immigration judge at one 30. The blatant discrimination between husband and wife, her complaints might be the same as his. Then what, then where are we? Well, this court doesn't have jurisdiction over this argument because the argument has not been presented and exhausted before either the immigration judge or the board of immigration appeals. And he had an opportunity to be sure to make that argument because he claims in his brief for the first time to this court that his wife was, are you saying that the wife's case was entirely different than the husband's? I don't know anything about his wife's case. Don't you think that you ought to find out maybe, or we should find out? Well, we're investigating, but again, it is immaterial to this appeal before this court because this court doesn't have jurisdiction over it. And the record is the review is limited to what is in the record. So the attorney general would be, this is a hypothetical question. The attorney general takes the position that it's consistent with the purposes, the general purposes of immigration naturalization law, that a husband and wife having exactly the same factual basis for an asylum claim to have one granted and one denied on the merits? Well, I don't think. Let's start with a yes or no. I think the answer is yes. I think that there's nothing about our jurisprudence or the immigration statutes or regulations in particular that compels consistent findings in two different cases, even if they are based on. If the husband and wife come into the country at the same time, they file their asylum applications at the same time, it happens that they go before two different immigration judges. They, with the same lawyer, they present exactly the same facts. And the husband is denied and the wife is granted. It's okay with the government to deport the husband. Again, I think. Remove the husband. I think the answer is yes, Your Honor. I think as our system of jurisprudence and the immigration laws in particular, it is, there is nothing about our system that requires consistent outcomes in that situation. How about humanity? That's a difficult question to answer. I mean, it's assuming that these are people's lives. I understand, Your Honor, but the statutes, of course, and the regulations are what dictate the outcome as well as. No humanity in the statute. No, I think the statute, of course, allows for that as does the Attorney General's discretion, but there's nothing that. Discretion includes discrimination between sexes? No, of course not, Your Honor. Well, why then, why then isn't it important that we find out or know, or you know at least and tell us, why the wife was granted asylum? And the husband wasn't. We sit here and visualize a blatant discrimination between husband and wife, and you tell us nothing. We can't do anything about it. With respect, Your Honor, the record is barren about his wife's claim. There's nothing in this case, in this record, about his wife. Let's suppose, and I'm just asking basically a hypothetical, let's suppose that the act occurred, we don't know, of course, as you've said, but let's suppose it occurred long after, or months or years after the BIA summarily affirmed what the IJ did here. How could petitioner put that in the record in that time sequence? I'm not sure what the avenue would be for doing that. As you recognize, that's not this case. But I'm not sure what the avenue would be to do that, Your Honor. Okay. But to answer, if I may, continue, the immigration judge also found that there wasn't the requisite link here between the acts described and the petitioner's race or religion. And if you look at 117 and 123 through the record about these Fenians coming to his house, there's no specific evidence in there that they were motivated by his ethnicity or religion or him being a Kurd. And you can see as well about no government action, the petitioner himself testified that he didn't report the first Fenian appearance to the police. So it was quite reasonable for the immigration judge to conclude that the government was not unable or unwilling to control this group when they couldn't know about it in the first place. And there's nothing in the record that compels an opposite conclusion as to that arrest. In May 1998, the immigration judge reasonably concluded that what the petitioner had described was a criminal arrest. The petitioner himself testified that this was a, quote unquote, street fight. You can see that in the record at 127 and 128. And so, again, this was reasonably viewed by the immigration judge as not persecution, but an action taken by the police in response to a criminal action. And the record is that the police arrested half of the combatants. Is that right? It's not clear in the record. Isn't that what the petitioner testified to? I don't recall his testimony saying quite that, your honor. Did he say that the only people that were arrested were his group? I think that is elsewhere in the record, maybe in the briefs, but I don't recall he himself saying that, your honor. But even so, I submit there's nothing in this record to compel the opposite conclusion that this was done on account of persecution. It was a street fight. So there's no government action here. There's insufficient evidence here to compel a finding that the actions taken were on account of the petitioner's race or religion. And there's no well-founded fear or acts rising to the level of past persecution. Okay. Thank you for your argument. Thank you. Rebuttal? Yes, thank you, your honor. Two things. Section 209 HCFR specifically says that there is family unification in asylum cases. And so in response to your question, what would require the government to do something about the petitioner, if his wife was granted asylum, it's HCFR 209. Can you give us a time sequence? When was her grant, if it was granted? It was granted after the BIA decision. Did you move to reopen? We didn't move to reopen. We don't represent the wife, your honor. I have nothing to do with the wife's case. But you would want to move to reopen this case. I would certainly make an effort to do that, yes. Okay. Now, the other thing I'd just like to point out before I leave, you had mentioned on page 159, it specifically says in continuity that a lack of police response to serious crimes committed against this group by other citizens was one of the bases for their claim of discrimination and persecution. And that's at the bottom of page 159 in the administrative record. Okay. Thank you. Thank both sides for their argument. The case just argued will be submitted for decision. We'll proceed to the next argued case on the calendar, which is Alvarado versus Small. If counsel are present, if they'd come forward, please.
judges: Ferguson, Siler, Hawkins